**EXHIBIT A**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| MARIPAT L. GATTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| CEP AMERICA-MISSOURI, LLLP and ) | |
| CEP AMERICA, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Serve: ) | |
| Registered Agent Solutions, Inc. ) | |
| 711 N 11th St ) | |
| Saint Louis, MO 63101-1231 ) | |

## PETITION

Plaintiff Maripat Gatter (hereinafter "Plaintiff" or "Gatter"), by and through undersigned counsel, and for her Complaint directed against Defendant CEP America-Missouri, LLLP and CEP America, LLC (collectively "Defendants" or "Vituity"), states as follows:

### SUMMARY

Maripat Gatter is an emergency physician. In the summer of 2020, Defendants began to cut her hours while simultaneously hiring new, younger physicians. Plaintiff went from fourteen shifts in March 2020 at St. Mary's Hospital in St. Louis, down to only five shifts by June 2020. She was then completely removed from the August 2020 schedule. From then until her constructive discharge in January 2022, Plaintiff continually sought additional hours and attempted to work full-time, but Vituity refused. Vituity ignored her complaints of age discrimination and never provided her a reason besides stating that she did not receive additional hours because she was "part-time."

The real reason why her hours were cut, and she was eventually fired was because Vituity was intentionally hiring newer, younger physicians for St. Mary's Hospital's Emergency Department. When Plaintiff complained, Vituity did not have a response and chose to simply ignore her and pressure her to resign.

## INTRODUCTION

This lawsuit is being brought by Plaintiff to seek redress for unlawful age discrimination. Plaintiff was subjected to unlawful employment discrimination by virtue of Vituity eliminating her hours and terminating her employment.

1. This cause of action arises out of the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. §621 *et. seq.,* (hereinafter "ADEA").

2. Plaintiff's date of birth is March 29, 1962, and in April 2020 – the date she was informed her hours were being cut – she was fifty-eight years of age.

3. Plaintiff is within the class of persons protected by 29 U.S.C. 621 *et. seq.*

## JURISDICTION AND VENUE

4. Defendants' unlawful employment practices occurred in St. Louis County, Missouri; therefore, jurisdiction and venue are proper in this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about June 14, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission alleging age discrimination.

6. A true and accurate copy of Plaintiff's Charge is attached hereto as *Exhibit 1*.

7. Plaintiff's Charge provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial Complaint may be and is as broad as the scope of the investigation that could reasonably be expected to have

Electronically Filed - ST LOUIS COUNTY - October 05, 2023 - 06:32 PM

grown out of the Charge.

8. Plaintiff received a Notice of Right to Sue on July 7, 2023, from the EEOC and this action is filed within 90 days from the receipt of that Notice.

9. The Notice of Right to Sue is dated June 28, 2023, but the Notice was not delivered to Plaintiff until July 7, 2023, after Plaintiff's attorney inquired about whether a Notice had been issued. A true and accurate copy of the Notice of Right to Sue from the EEOC is attached hereto as *Exhibit 2* as well as the email exchange between Plaintiff's attorney and EEOC staff regarding the delay as *Exhibit 3*.

10. Plaintiff has satisfied and exhausted all private, administrative, and judicial prerequisites to the institution of this action.

**PARTIES**

11. Plaintiff Maripat Gatter was, at all relevant times, an individual residing in St. Louis County, Missouri.

12. At all relevant times, Plaintiff was employed by Vituity and worked in St. Louis County, Missouri.

13. At all relevant times, Plaintiff was an "employee" of Vituity within the meaning of the ADEA, 29 U.S.C. § 630(f).

14. Defendants are registered to conduct business in the State of Missouri and operate a for-profit health care system throughout the United States.

15. Vituity markets itself as a physician-owned group with more than 450 locations.

16. At all relevant times, CEP AMERICA-MISSOURI, LLLP is a domestic limited liability limited partnership while CEP AMERICA LLC is a foreign limited liability company.

17. At all relevant times, Vituity has continuously been an employer engaged in an industry affecting commerce.

18. At all relevant times, Vituity was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

### STATEMENT OF CLAIMS

19. Plaintiff is a 61-year-old female citizen.

20. Plaintiff was employed as a physician by CEP America-Missouri, LLLP and CEP America, LLC (collectively "Vituity") at St. Mary's Hospital's Emergency Department in St. Louis. Vituity provides physicians services for various healthcare providers across the country.

21. Plaintiff is a board-certified Emergency Room physician and had worked in SSM Health's St. Mary's Hospital's Emergency Department since February 2012 until her termination. Plaintiff cared deeply about her patients at St. Mary's Hospital and always performed her job duties at a high level.

22. Plaintiff never received discipline or coaching, and proudly served on the Hospital's peer review committee.

23. Vituity provides physicians services for various healthcare providers across the country. In March 2020, Vituity began assigning physicians to the Emergency Department at St. Mary's Hospital. Plaintiff was required to work for Vituity to continue working in the Department.

24. Plaintiff was labeled a Vituity "partner," but she was an employee.

25. Plaintiff was assigned hours by her supervisors; Plaintiff did not have control over the hiring or termination of other "partners;" she had limited access to profit or loss sharing; she did not have any voting rights; she was not included in partner-level meetings; and she did not make any capital contribution into the partnership.

Electronically Filed - ST LOUIS COUNTY - October 05, 2023 - 06:32 PM

26. Most importantly, Defendants controlled Plaintiff's ability to work by assigning or refusing to assign her hours. The number of hours Plaintiff was assigned was fully within Defendants' discretion despite her repeated attempts to increase those hours, as described below.

27. Defendants drastically cut her hours beginning in April 2020. Plaintiff went from fourteen shifts in March 2020 to only five shifts by June 2020. Vituity then completely removed her from the August 2020 schedule. Plaintiff complained to her supervising physicians, Dr. Cassandra Haddox, St. Mary's Hospital-St. Louis Medical Director, and Dr. Zachary Tebb, Regional Medical Director for Vituity.

28. Plaintiff was clear to Drs. Haddox and Tebb that she wanted additional hours and desired to be full-time. After this complaint, Plaintiff was placed back on the schedule for only four shifts per month despite Vituity's assurance that her number of shifts would increase.

29. However, no increase occurred. Plaintiff remained part-time and was only assigned four shifts per month from August 2020 until March 2021 while Vituity hired new physicians and assigned shifts to others despite her repeated requests for more hours.

30. Respondents systematically eliminated older physicians from the schedule since it began assigning Emergency Department shifts in March 2020. Some older physicians were targeted from the beginning and forced out at St. Mary's. Others have a similar history with Vituity as Plaintiff does—hours reduced, then later taken off the schedule, and eventually forced out for not maintaining hours. This includes fellow physicians Lawrence Brown, Linda Bick, Robert Honegger, Leigh Chou, Michele Ong, Saad Alkaade, and others. Meanwhile, the Emergency Department has transformed to include almost exclusively younger physicians (i.e., physicians under 40 years old).

31. In April 2021, Defendants gave her only two shifts and Plaintiff was taken off the May 2021 schedule without warning or explanation.

32. Plaintiff sent a letter on March 26, 2021, to Drs. Haddox and Tebb about her lack of hours and how Vituity continued to hire younger physicians while simultaneously reducing the hours of older physicians. Plaintiff then spoke to Drs. Haddox and Tebb via a video call on April 1, 2021.

33. None of her concerns were addressed nor was there any explanation for why her hours were being eliminated while younger physicians were being hired and given additional hours. Plaintiff repeatedly asked why she was being treated differently but Vituity never gave her a straight answer.

34. This was what Plaintiff had experienced since the summer of 2020 where she repeatedly reached out to Vituity for explanation for her reduction in hours. However, Plaintiff only received vague answers about her "part-time" status, which completely ignores why Respondents refused to make her full-time, why other part-time physicians are still provided additional hours, and why Plaintiff had been removed from the schedule while Vituity continued to hire new, younger physicians.

35. On April 1, 2021, Dr. Tebb said Plaintiff would be placed "in the queue" for hours but also suggested Plaintiff take a sabbatical or leave of absence. It was clear Plaintiff was being forced out and her complaints likely meant Vituity would refuse to schedule her again.

36. After the April 1st phone call, this is exactly what happened. Plaintiff was not assigned any new shifts and was removed from the June 2021 schedule.

37. After June 2021, Plaintiff was only assigned a handful of shifts and it was clear Vituity wanted her to take a permanent "leave of absence" as Dr. Tebb had suggested in April.

38. Defendants' refusal to provide Plaintiff sufficient work hours intentionally forced Plaintiff to leave employment in January 2022.

## DISCRIMINATION AND RETALIATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 623(A)(1)

39. Plaintiff's age was a motivating factor in Respondents' refusal to provide Plaintiff with shifts, refusal to designate her as "full-time," and the decision to remove her from work schedules and force her to resign her position. Defendants' actions violated the Age Discrimination in Employment Act ("ADEA") by engaging in the adverse employment actions described above, including removing Plaintiff from the schedule and effectively terminating her employment.

40. Vituity's stated reason for refusing to assign Plaintiff the same number of hours as younger physicians because Plaintiff was "part-time" is pretext for discrimination based on Plaintiff's age and ignores Plaintiff's repeated attempts to work full-time.

41. Plaintiff's age was a "but for" reason for Vituity's decision to terminate Plaintiff's employment.

42. Vituity discriminated against Plaintiff because of her age, in violation 29 U.S.C. § 623(a)(1), which makes it unlawful to discriminate against any individual with respect to the compensation, terms, conditions or privileges of employment because of age.

43. Vituity's conduct was outrageous and showed complete indifference to or conscious disregard for Plaintiff's rights.

44. Vituity's conduct is in violation of the ADEA.

45. As a result of Vituity's conduct and the actions alleged herein, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

46. As a result of Vituity's conduct and the actions alleged herein, Plaintiff has incurred attorneys' fees and costs of litigation.

47. As a result of Vituity's conduct and the actions alleged herein, Plaintiff has suffered emotional distress and mental anguish.

48. Vituity's conduct was outrageous because of Vituity's evil motive or reckless disregard to Plaintiff's right not to be discriminated against. Vituity's conduct warrants the imposition of liquidated damages.

WHEREFORE, Plaintiff demands judgment against Vituity and prays for: (1) a sum of money making Plaintiff whole for the harm caused, including compensatory damages, liquidated damages, back pay, front pay, lost benefits, damages for emotional distress, humiliation, and diminished employment status; (2) temporary, preliminary, and/or permanent injunctive relief, including but not limited to an Order requiring Vituity to refrain from unlawful retaliation; (3) costs and expenses of litigation and a reasonable sum as and for attorneys' fees; (4) pre-judgment interest; and (5) such other and further equitable and legal relief as this Court deems just and proper.

Respectfully submitted,

CARTER LAW FIRM, LLC

*/s/ Jase Carter*
Jase Carter, Mo. Bar No. 63752
jase@carterfirm.law
4500 W. Pine Blvd
St. Louis, MO 63108
Tel: (314) 675-1350